22713. I cannot even begin to catalog all the errors in the decision below, which I'm allotted. So I'd like to focus on two central errors that I think impact on the others. The first is the mischaracterization of plaintiff's trademark infringement and unfair competition claims, all of which rest, in whole or in part, on the federally registered incontestable mark Midcap Business Credit. And Midcap Business Credit cannot, as a matter of law, be attacked on descriptiveness grounds. The second is the misclassification of plaintiff's Midcap marks as, at worst, generic or, at best, descriptive. So let's focus first on plaintiff's marks. Each of the parties uses a variety of branding to show... I'd like to be really clear about what is registered and what is not. And could you actually tell us the status of the unregistered mark, the application for Midcap alone? Midcap alone has not been registered. Midcap Business Credit is the unregistered mark, but it's an incontestable mark, which means it can't be challenged. Is the Midcap mark alone, is there an application? Understanding that it's not been registered, is there another pending application? There is a pending application for Midcap as a standalone mark, yes. And are you actively pursuing that? It looked to me like that would have been sitting for some time. Because I was confused from the briefing about the extent of your claim. What's registered and unprotectable is Midcap Business Credit, but you seem to make reference to that you simply seek to protect your exclusive rights to use your incontestable mark and variants of it, including Midcap. Well, so Midcap I have more of a problem with because that is not registered and that seems very generic. And that's part of what the district court got stuck on in terms of its sense that you were conflating your claims, your infringement claims. So if you're just focusing on Midcap Business Credit, that is not a phrase, a three-word phrase that your adversary was using. Isn't that correct? That's correct. But, of course, you don't have to have identical marks in order to establish an infringement claim. And I would stand on it that Midcap Business Credit and the Midcap Financial Loan, which are referred to as Midcap for short, are very, very close. But you focus on the dominant impression, and the dominant impression because business credit has been excluded really by the USPTO from protection, is that you have a claim to using Midcap in the financial services industry, it looks like. Am I wrong in that? Well, my client has the right to use the composite mark Midcap Business Credit, and to protect that mark against confusingly similar marks. It has established through its use of Midcap common law rights in Midcap. And I would just like to hone in on what Midcap means. So Midcap is a term that is used to refer to the capitalization of publicly traded companies. And it's used all the time. It's used in the civil context, the criminal context. Everyone in the industry understands what the term means, and it's a widely used term. Okay, but it does not mean middle market. It does not mean midsize. It does not mean companies with a capitalization of $2 to $5 million in production or except. What it refers to is publicly traded companies whose market value is between $2 billion and $10 billion or $1 billion and $5 billion, depending on the interest. By definition, the company is publicly traded. Midcap is a standalone term. It does not describe any feature or aspect of Midcap Business Credit's services. And I think the classification of marks can seem very esoteric, but it's really not that complex. Since the briefing and the case, this court candidate rise and shine against PepsiCo, 41 at court, 112. And I would direct your attention in particular to pages 121 through 22 in note one. And Judge DeVall there replained that classification of a mark does have an undeniable legal element. And in some cases, it's appropriate to classify a mark as a matter of law. He cited a case. Did you submit a 28-J letter? I'm sorry? Did you submit a letter alerting us to this decision by Judge DeVall? I have not yet, Your Honor. The case relies on Ross Conner's e-collective, which we did discuss in our briefs, in which this court held it as a matter of law that the district court's classification of the mark collective as descriptive as opposed to suggestive was clear error. And you always have to examine a mark in the context in which it is used. Here, clearly, MidCap does not refer to loans or to lending. It is not like toothpaste for toothpaste, which is the example Judge DeVall used. You can hold as a matter of law that MidCap is not generic for lending services. Is it descriptive of plaintiff services? It is not. The record, the complaint, the elevated allegations of the complaint say, MidCap business credits clients are small to mid-sized companies who have trouble obtaining— What in the allegations in the complaint, which, as you know, Judge Heller's team was very focused on, What in the allegations of the complaint are your best allegations with respect to the MidCap mark standing alone? Well, there are— Because you're mentioning MidCap business credit as the registered mark. I'm very focused on the MidCap mark. Well, the mark has been meticulously used since 2004 by Mike Meyers. Obviously, not all the branding and picture are always used together. They're used differently in different contexts. We've provided you with, in some cases, the use of MidCap as the mark by the client, press coverage, awards, so on and so forth. Go ahead. So Judge Heller's team went through the Thompson factors. The Colorado factors? Well, with respect to the MidCap marks, the standalone MidCap mark, trying to ferret out the common law rights in the MidCap marks, I thought he went through a separate set of factors. Is that correct? The only, like you said, confusion analysis that the judge performed was supposedly a trademark infringement claim and trust on MidCap business credit. And with respect to the standalone MidCap mark, your argument, but maybe I misunderstood the argument, was that it was entitled to protection because it had acquired a secondary meaning. Right? Well, the argument is that MidCap is inherently distinctive, and I don't have to prove secondary meaning because it doesn't describe any feature of MidCap business credit services. But even if you found it was descriptive, and I'm not sure how you could because it doesn't, then I'm entitled to prove secondary meaning. All right. And with respect to the secondary meaning aspect of that, understanding that that was an alternative argument in defense of the mark, am I right that Judge Hellerstein went through the requisite factors in determining whether it satisfied the secondary meaning aspect of it? No. So Judge Hellerstein focused exclusively on the logos of the markings. He was making a lot of assumptions about how people see the marks in the marketplace. And I doubt that he focused on whether MidCap as a word mark had acquired secondary meaning. Could I ask a question? Yeah. So I understand that the district court issued its order the day before you were scheduled to have an oral argument, and he instructed the clerk to close the case that day. You did not go back to him and move for reconsideration or submit a proposed amended complaint. Is that right? This was the case. Yes. And so if we were to agree with you that there was error here, what would you include in an amended complaint to cure any deficiencies that the district court might have highlighted, understanding that you disagree with him generally, but to the extent, for example, that you've heard some concerns expressed about over-claiming rights in MidCap in the financial services sector generally, do you have allegations that you would propose to make about acquiring secondary meaning or distinctiveness in some way? Well, I certainly could. In the answer to those allegations, I think I would also clarify that MidCap does not describe the companies that my client targets. I think it was misclassified as descriptive rather than as suggestive. And your allegations in the complaint regarding confusion were sparse, in my view, given the time frame over which they were drawn, from which they were drawn. Are there additional instances of confusion that you might use to bolster your complaint? Your Honor, it is so rare that evidence of actual confusion becomes polite before you get into discovery. This complaint actually creates more instances of actual confusion than you normally see. But I would have thought that you would have ‑‑ it's on you to demonstrate likelihood of confusion, and therefore as part of your investigation in filing your complaint, you need to find that out. It's not all information within the scope of the ‑‑ you know, in the private files of the defendant. That is true, Your Honor. Correct. We do allege in the complaint that these instances are representative of the United States. Fundamentally, you only have, as I read it, but again, maybe I misread it, one instance of true consumer confusion, client confusion. Is that fair? You only allege that. You allege a couple of instances, but in terms of client or consumer confusion, I could only identify one where there is a signature. But actual confusion can occur in a number of different ways, and it is not limited to confusion by a deceived purchaser. No, I appreciate that. Confusion is confusion as to sponsorship, source, or affiliation, and there are certainly numerous instances of confusion as to affiliation. We'll hear from the other side, and then you have reserved two minutes for rebuttal. May it please the Court. My name is Jim Asteroid, and I represent the defendant, Apelles. NCAC is a word in the public domain, and certainly part of the everyday arguments of those who run the financial services industry. Its usage belongs to all who wish to speak it. These words from the District Court capture a fundamental and incurable defense in the plaintiff's complaint, which seeks to monopolize the use of the word mid-cap and prevent others from using it. I want to pause here and address a few of the questions that this panel had to ask upon a opposing counsel. Joe, according with respect to your question about the mid-cap standing alone, there is a currently pending application for that. The U.S. Patent and Trademark Office rejected that application on April 26, 2022, and there's a response actually due today to that office action. Okay, thank you. So they rejected it on the basis that it was descriptive of the plaintiff's products and services. With respect to the story, you seem to have, maybe for purposes of this appeal, acknowledged that it's descriptive but not necessarily and not generic. Is that fair? Because you say descriptive, parenthetical, and generic or generic, closed parentheses. I think Your Honor is greatly exactly correct. For purposes of this appeal, we're arguing that it is descriptive. I believe there's a fair argument that it's generic, but this panel doesn't have to reach that question. Your Honor, because it's descriptive, the plaintiff was required to establish secondary meaning. And I think Your Honor, the question is, did the district court go through an analysis of those factors? And the answer to that question is yes, except joint appendix 238. Let me ask a question, though, about what the district court said. I was struck by the district court's repeated usage of the word evidence in its decision on a motion to dismiss. That suggested to me that there was possibly some confusion and that he was looking to the complaint for more than he should have possibly on a motion to dismiss. How can you allay that concern? Sure. So I saw that word in that opinion myself as well. I think if you look at the analysis, what the court is clearly looking at are the allegations in the complaint and saying, look, is there any factor? It's a question that Your Honor asked my opponent at the end of her presentation. What would you say in response in an amended complaint? And on the question of secondary meaning, there's really not anything else to say with respect to some of the factors. For example, there's not a single allegation of consumer service. There's not a single allegation that there was an attempt to plagiarize the market. With respect to the exclusivity of the market, the district court found that implausible. But now with those deficiencies, the potential deficiency highlighted, shouldn't your opponent have an opportunity to amend the complaint and to provide those kind of allegations? No, because doing so would be futile. And we take a step back and we say, what's really going on here? The plaintiffs do not have the ability to monopolize the stand-alone term mid-cap as applied to the financial services. But they do have the right to monopolize the phrase mid-cap business credit, right? So if we were to look at mid-cap business credit, now we're moving out of the secondary. It's a separate issue. Separate. We're exactly right. We're moving out of the secondary meaning and we're moving over to the likelihood of confusion. And with respect to those factors, now we're talking about the Polaroid factors, the eight factors, and there were really only three factors that were at all contested in the briefing. Those were the strength of the mark, the similarities of the mark, and the actual confusion point, which Your Honor had addressed. With respect to the strength of the mark, even if the mark is incontestable, it is obviously a new mark. There are a litany of uses that I'm sure this panel is familiar with before this case. I also respectfully submit that if I told you that my client's name was mid-cap financial, other than knowing that he served a particular segment of the market, you actually wouldn't understand or have any sense of what actual products and services our client offered. And that's fundamentally why the plaintiff's position is so dangerous. There's no limiting principle if mid-cap business credit can be used to stop my client from truthfully describing his product as mid-cap financial. If you look at the similarity of the marks and you look at how they're actually encountered in the marketplace, again, there's no amount of pleading or amending that's going to change the fact that my client uses a different mark, mid-cap financial. It's presented differently on two lines instead of one. It's presented in a different font, and the market encounters it differently. The district court weighed out the differences, which are overwhelming, between those two marks. With respect to actual confusion, as both Judge Lohier and Judge Carney acknowledged, first of all, pretty limited, given 13 years of coexistence, and not prohibitive of actual confusion with the one exception of Judge Lohier. And so there simply isn't a dare there if we were to return this to the district court. So here's my question, I guess. Not necessarily a problem. Usually it is the better practice for the district court judge to review all of the Polaroid factors. I don't know that on this record the plaintiff said, oh, these factors are not disputed. I understood that almost everything was disputed except, ironically, those that the defendant did not dispute favored the plaintiff. So why should we just remand this back? Why should we undertake this exercise? Why should we remand this back to the district court judge to actually go through the Polaroid factors, as opposed to, as I understand it, do a side-by-side comparison, which we have indicated is probably not the right way to proceed in connection with undertaking a Polaroid analysis? So a few responses to that. First, with respect to the only three factors that I think are truly contested, the district court did provide the analysis. It's admittedly a little split up in the opinion, but our director honors, with respect to the strength of the mark, that's discussed at Joint Appendix 235 and 236. With respect to the similarity of the marks, Joint Appendix 229 to 234. And with respect to actual confusion, primarily discussed at Joint Appendix 240. As your Honor noted, there are two factors that, to be clear, just for purposes of this appeal, we're not content, we're not disputing. So that's proximity to the original gap. And so what are you left with? You're left with three factors. The defendant's intent in adopting the mark. There's no allegation that the defendant made in adopting the mark in 2008. The quality of the services. Again, one searches in vain in the complaint for any allegation that our services are inferior. In fact, the complaint acknowledges they are more quaint. And then the sophistication of the consumers. And I would direct this court's attention to JA 93 and 95. That's the trademark application that the plaintiff submitted where it itself described its customers as sophisticated. And so if you were to remand, what would that really accomplish? Well, the court's addressed three factors that are in play. The complaint. And this is not a matter of advocacy. There's literally no allegation in the complaint that they complained to on those three factors I mentioned. The bad taste. The quality of services. The sophistication of the consumers. And then the two factors that are undisputed. So I just don't think it would meaningfully advance this court's view to return it to the district court. Am I wrong in recalling that your opponent asked for or wanted to have a discovery about the quality of the services? That that was not a conceded point? Maybe I'm just misremembering. Sure. So my argument there is that there's no allegation in the complaint that our services are of inferior quality. Well, maybe if we have some discovery, we'll see. That doesn't seem to be a standard. Especially when they've acknowledged and pointed to this actual confusion, the fact that we're winning awards every day. All right. Thank you. So unless the panel has any further questions, we're happy to address them. Thank you very much. Counsel. Thank you. Mr. Pastore said something that I think is very telling, which is if you saw MidCap Financial, you would have no idea what services this client offers. That's because MidCap has no meaning with reference to lending services to loans. It is a term used in the financial services industry, which is a vast industry that has a lot of different markets and sectors. And that's the class that you're registered in, that the mark is registered in, right? For lending services, yes. But Class 36 is just financial services generally, right? It's not one. Yeah, obviously. The consumer products industry is one industry. There are a lot of different market segments within each industry. If somebody is using MidCap for the name of an investment fund that invests in MidCap stocks, I would agree. It's a very descriptive term, but it has no descriptive meaning as applying to loans or lending services. Our papers go through the Polaroid factors. Can you allege that in the complaint? I'm sorry? Do you allege that in the complaint? That is that it has no specific meaning in the context of lending services. Do you allege that in the complaint? We allege that it is a mark, and it's a distinctive mark. It didn't occur to us that it was a descriptive mark, because it has no meaning as applied to loans. It's not toothpaste for toothpaste. So I think that the cross-counters media case is going to be very helpful because it differentiates between descriptive and suggestive terms. What differentiates a suggestive mark is the immediacy of the association. A mark is suggestive rather than descriptive if it requires some imagination or perception to reach a conclusion as to the nature of the goods. If the mental bleed is not almost instantaneous, as Curtis said, it strongly indicates suggestiveness, not descriptiveness. So here, if you try to describe plaintiff with the term mid-cap, you can't. It doesn't apply. At most, it suggests that plaintiff's borrowers, who aren't mid-cap companies, and the complaint does plead that they're smaller mid-size companies, that they can aspire to become mid-cap companies someday by obtaining loans from the plaintiff. Playboy has been described as a suggestive mark, because it's about the aspirations of the readership of that magazine. Coppertone, for suntan lotion, is a suggestive mark. It's not a descriptive mark. How about metropolitan? How about metropolitan? Metropolitan. We can pick any number of names. How do I distinguish between a descriptive and a suggestive mark? Metropolitan opera, metropolitan museum of art. Are those two different areas, or are those the same? I'm sorry, but you have to apply it in the context of the particular goods or services that are being offered. So if I offer apples under the name apple, it's a generic mark. If I offer computers under the word apple, it's an arbitrary mark. You have to look at it in a particular context. And Citibank has been held a non-descriptive mark. Okay. Thank you very much. Thank you so much. That was our decision.